IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| McDOWELL BUILDING, LLC, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-12-2876 |
| ZURICH AMERICAN INSURANCE CO., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This is a diversity action brought by Plaintiff McDowell Building, LLC ("McDowell") against Zurich American Insurance Co. ("Zurich") for breach of an architect's malpractice insurance policy. McDowell alleges that it was harmed by the negligence of its architect, and that Zurich wrongfully denied coverage under the policy. Pending before this Court is Zurich's Motion to Dismiss (ECF No. 6) pursuant to Federal Rule of Civil Procedure 12(b)(6). In support of its Motion, Zurich argues that it did not receive timely notice of the claim and its denial of coverage was justified under Maryland law. In response, McDowell argues that dismissal at this stage would be improper because Section 19-110 of the Insurance Article of the Maryland Code ("§ 19-110") prohibits insurance companies from denying coverage based on untimely notice unless there is a showing of actual prejudice. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Defendant Zurich American Insurance Co.'s Motion to Dismiss (ECF No. 6) is DENIED.

## BACKGROUND

This Court accepts as true the facts alleged in the plaintiff's' complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). Plaintiff McDowell is a real estate developer

involved in a project known as the "McDowell Building," located in the Mt. Vernon neighborhood of Baltimore, Maryland. Pl.'s Compl. ¶¶ 2, 4. In order for the project to be financially viable, McDowell required certain state and federal historic preservation credits, worth $625,000. *Id.* ¶ 5. Accordingly, McDowell hired DR Brasher, Inc., d/b/a Brasher Design, ("Brasher Design") to complete the applications necessary for obtaining the required credits. *Id.* ¶ 6. Karen Starika, an employee of Brasher Design, was tasked with preparing and filing the applications. *Id.* ¶ 8.

On September 23, 2004, Brasher Design discovered that the Maryland Historical Trust ("MHT"), the agency that oversees the Maryland tax credits, had no application for the McDowell project on file. *Id.* ¶ 9. MHT further declared that it was now too late for McDowell to apply for the tax credit. *Id.*

Initially, McDowell brought suit against MHT in the Maryland courts, seeking a writ of mandamus and a declaratory judgment forcing MHT to process McDowell's Maryland tax credit application. Pl.'s Compl. ¶ 10. On June 27, 2006, however, Frank Zokaites, an individual member of McDowell, filed a cross-claim and third party complaint (the "Zokaites Complaint") against Brasher Design on behalf of himself and McDowell. *Id.* ¶ 11. The Zokaites Complaint included a professional negligence claim against Brasher Design, which was contingent upon the state court finding that no tax credit application had been filed. *Id.* The court severed the Zokaites Complaint and stayed it pending resolution of McDowell's suit against MHT. *Id.* ¶ 13.

Brasher Design was covered by a series of consecutive one-year Architects and Engineers Professional Liability insurance policies from the time of initial discovery in September 2004 to the commencement of the suit against Brasher Design in June 2006. *Id.* ¶ 17. Brasher Design's original policy with Zurich, the 2004-05 Policy, was effective July 6, 2004 to July 6, 2005, while

its 2005-06 Policy was effective July 6, 2005 to July 6, 2006. *Id.* ¶¶ 18-19. The Retroactive Date for both of these policies was July 5, 1988. Pl.'s Compl. Ex. B, p. 3; Ex. C, p. 3. The final policy covered Brasher Design from July 6, 2008 to July 6, 2009. Pl.'s Compl. ¶ 16. The relevant terms of the 2005-06 and the 2004-05 policies are essentially identical unless otherwise noted.

McDowell attached the 2004-05 and 2005-06 insurance agreements to its Complaint as Exhibits B and C. The first line of the 2004-05 Policy states that "THIS POLICY PROVIDES CLAIMS-MADE AND REPORTED COVERAGE." Pl.'s Compl. Ex. B at p. 5. Similarly, the 2004-05 Policy defines the terms of coverage accordingly:

> We will pay on behalf of the "Insured" all sums in excess of the Deductible noted in Item 6, of the Declarations that you are legally obligated to pay as "Damages" because of "Claims" first made against you during the "Policy Period" and reported to us during the "Policy Period," or the Extended "Claims" Reporting Period if applicable, provided that:
> A. the "Claim" arises out of an actual or alleged negligent act, error or omission with respect to "Professional Services" rendered or that should have been rendered by you or any entity for whom you are legally responsible, including your interest in joint ventures;
> B. the act, error, or omission took place during the "Policy Period" or on or after the "Retroactive Date" specified in the Declarations;
> C. prior to the effective date of the first policy issued to you and continuously renewed by us, no principal, partner, director or officer of yours had knowledge of any circumstance that could reasonably be expected to result in a "Claim";[1]
> D. all "Claims" made against you are made during the "Policy Period"; and
> E. you give prompt notice of a "Claim", but not later than 60 days after expiration or termination of this policy, in accordance with the Notice of Claims conditions of this policy.

---

[1] The 2005-06 Policy replaces this subdivision with: "prior to the effective date of this policy you or any 'Insured' had no knowledge of any 'claim' or circumstances, involving an act, error, or omission, which may result in a 'claim' under this policy." Pl.'s Compl. Ex. C at p. 16.

3

Pl.'s Compl. Ex. B at p. 5. The term "Claim" is defined as "any demand received by you seeking 'Damages' or 'Professional Services' and alleging liability or responsibility on your part." Pl.'s Compl. Ex. B at p. 5. Finally, the section "Claim Provisions" provides that "[w]ritten notice must be provided to [Zurich] no later than 60 days after the expiration or termination of the policy." Pl.'s Compl. Ex. B at p. 8.

In early November, 2009, Brasher Design's attorneys first notified Zurich of the Zokaites Complaint. *Id.* ¶ 14. Zurich declined coverage by letter dated February 17, 2010. *Id.* ¶ 16. The stated reason for the denial was that the Zokaites Complaint had been filed before Brasher Design's most recent policy, which was effective July 6, 2008 to July 6, 2009. *Id.* McDowell alleges that Zurich was not prejudiced by Brasher Design's late notice. *Id.* ¶ 20.

McDowell's case against MHT proceed to trial in September of 2010, and the state court found that Brasher Design had not in fact filed an application. *Id.* ¶ 21. Brasher Design renewed its request for coverage at this point, but Zurich again denied the claim. *Id.* ¶ 22.

On June 1, 2010, Brasher Design and McDowell settled the claims in the Zokaites Complaint. *Id.* ¶ 24. Under the terms of the settlement agreement, the parties agreed that McDowell's loss due to Brasher Design's failure to file the application was $625,000 plus interest at the legal rate from April 2, 2005. *Id.* ¶ 25. In addition, Brasher Design assigned all claims against Zurich to McDowell. *Id.* ¶ 26.

After the settlement between McDowell and Brasher Design, McDowell instituted suit asserting its subrogated rights against Zurich in the Circuit Court for Baltimore City, Maryland on August 1, 2012. Zurich was served on August 27, 2012, and it removed to this Court on September 26, 2012 based on diversity of citizenship under 28 U.S.C § 1332. McDowell's Complaint (ECF No. 2) contains two counts. The first count alleges a breach of contract claim

4

premised upon a duty to indemnify, for which McDowell seeks "$625,000, plus interest at the legal rate from April 2, 2005, costs, and attorney's fees." *Id.* ¶ 30. The second count alleges a breach of contract claim premised on a duty to defend, for which McDowell seeks "an amount greater than $25,000, plus interest, expenses, and attorney's fees." *Id.* ¶ 35. On October 3, 2012, Zurich filed its Motion to Dismiss.

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's recent opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). The Supreme Court's decision in *Twombly* articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim).

Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Id.* at 679. Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Although the plausibility requirement does not impose a "probability requirement," *id.* at 556, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663; *see also Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 291 (4th Cir. 2012) ("A complaint need not make a case against a defendant or *forecast evidence* sufficient to *prove* an element of the claim. It need only *allege facts* sufficient to *state* elements of the claim." (emphasis in original) (internal quotation marks and citation omitted)). In short, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Iqbal*, 556 U.S. at 664.

## ANALYSIS

The issue before this Court is whether Section 19-110 of the Insurance Article of the Maryland Code applies in this case. In essence, § 19-110 provides that, if an insurer is to disclaim coverage based on failure to provide timely notice that is required under the terms of an insurance policy, the insurer must establish that the failure to provide notice caused actual prejudice to the insurer.[2]

In its Motion to Dismiss, Zurich argues that § 19-110 is inapplicable and that its denial of coverage was therefore proper and permissible. In Zurich's view, the timely notice requirement

---

[2] The full text of § 19-110 reads:
> An insurer may disclaim coverage on a liability insurance policy on the ground that the insured or a person claiming the benefits of the policy through the insured has breached the policy by failing to cooperate with the insurer or by not giving the insurer required notice only if the insurer establishes by a preponderance of the evidence that the lack of cooperation or notice has resulted in actual prejudice to the insurer.

Md. Code, Ins. § 19-110.

contained in Brasher Design's insurance policy was a condition precedent of coverage, and as such, § 19-110 was not triggered. In opposition, McDowell argues that § 19-110 prohibits insurance companies from characterizing timely notice provisions as conditions precedent to insurance coverage.

In support of their positions, both sides point to *Sherwood Brands, Inc. v. Great American Insurance Co.*, 418 Md. 300, 13 A.3d 1268 (2011)—the capstone of a series of cases from the Court of Appeals of Maryland interpreting § 19-110. On the one hand, Zurich argues that this line of cases creates an exception for the type of insurance involved here and, therefore, that no showing of prejudice was required. On the other hand, McDowell argues that § 19-110 applies to all types of policies and that the few cases where the statute was not applied involved factual situations where the claim itself (and not just the notice) occurred after the policy period ended. In light of the history of § 19-110 and its interpretation by Maryland courts, as well as the factual circumstances of this particular case, this Court finds that § 19-110 must be applied to this policy.

### I. The History of § 19-110 and Subsequent Interpretation by the Court of Appeals of Maryland.

Judge Bredar of this Court has recently reviewed the history of § 19-110 in in *Minnesota Lawyers Mut. Ins. Co. v. Baylor & Jackson, PLLC*, 852 F. Supp. 2d 647, 658-62 (D. Md. 2012). Perhaps the most detailed analysis, however, appears in the *Sherwood* case itself. *See* 318 Md. at 310-24, 13 A.3d at 1274-83. Suffice it to say, § 19-110[3] was enacted to overturn *Watson v. United States Fidelity and Guaranty Co.*, 231 Md. 266, 189 A.2d 625 (1963), which held that

---

[3] For ease of reference, the Court refers to the enactment as § 19-110 both here and throughout this opinion. In reality, the original statute was enacted under Article 48A, § 482 of the former Maryland Code and applied only to automobile policies. *Sherwood*, 418 Md. at 311, 13 A.3d at 1275. In 1966, the statute was extended to any liability policy. *Id.* at 311 n.10; 13 A.3d at 1275 n.10. The statute was recodified in its current location in 1996. *Id.* at 322, 13 A.3d at 1281. While the wording of old § 482 and § 19-110 is slightly different, the Court of Appeals of Maryland has recognized them as substantively the same. *See id.* at 322, 13 A.3d at 1282.

7

timely notice could be characterized as a condition precedent for automobile insurance coverage under Maryland common law. *See Sherwood*, 318 Md. at 310-11, 13 A.3d at 11274-75. As several commentators have pointed out, the statute prevents the forfeiture that occurs when an individual pays for an insurance policy but is denied coverage on procedural grounds. *See id.* at 312, 13 A.3d at 1275 (quoting *A Legal Process Analysis for a Statutory and Contractual Construction of Notice and Proof of Loss Insurance Disclaimers*, 38 MD. L. REV. 299, 309-10 (1978)); *id.* at 314, 13 A.3d at 1277 (quoting *St. Paul Fire & Marine Ins. Co v. House*, 315 Md. 328, 345, 544 A.2d 404, 413 (1989) (Murphy, C.J., dissenting)). Meanwhile, the prejudice requirement helps to balance the interests of both insurers and insureds. While insurance carriers may be harmed when they are denied an opportunity to make an adequate investigation or put on an effective defense, the statute requires the carrier to demonstrate that such harm actually occurred before untimely notice may be invoked as the reason for denial.[4] Thus, the statute assures that the notice provisions of insurance policies are enforced in only those cases for which the notice provisions were drafted—i.e., where the insured's failure to provide notice has undercut the carrier's opportunity to limit its liability. *See id.* at 314-15, 13 A.3d at 1277.

The application of § 19-110 became more difficult with the rise of claims-made insurance policies. Claims-made policies provide insurance coverage for claims made against the insured during the policy period (rather than for a specific event that occurs during that time).[5] These types of policies are particularly common for professional malpractice insurance, as they provide effective coverage in situations where the negligent act was difficult to pinpoint, latent, or

---

[4] The term "actual" was inserted into § 19-110 in a 1997 amendment. *See Sherwood*, 418 Md. at 322 n. 17, 13 A.3d at 1281 n.17.

[5] Thus, claims-made policies are different from the traditional "occurrence" policies, which cover specific events and occurrences for a fixed time period. Under an occurrence policy, an insurer's obligations do not expire with the fixed time period of the policy; instead, the insurer "may be held liable for the covered events, barring statutes of limitations, at any time thereafter." *Sherwood*, 418 Md. at 318, 13 A.3d at 1279 (quoting *House*, 315 Md. at 356, 554 A.2d at 418).

occurred over an extended period of time. *See id.* at 316, 13 A.3d at 1277-78. A modified version of the claims-made policy is the "claims-made and reported" policy. Under this type of policy, the claim made to the insurer by the insured is the event triggering coverage. *See id.* at 317, 13 A.3d at 1278.

### A. T.H.E. Insurance Co. v. P.T.P., Inc.

The Court of Appeals first explored the limits of § 19-110 in *T.H.E. Insurance Co. v. P.T.P., Inc.*, 331 Md. 406, 628 A.2d 223 (1993). There, P.T.P. had purchased a claims-made insurance policy from T.H.E. Insurance Co. ("T.H.E.") for the period between April 2, 1987 and April 2, 1988 for its "go-kart track" business. *Id.* at 412, 628 A.2d at 225-26. The policy required written notice of a claim "as soon as practicable" and provided a 60-day extended reporting period. *Id.* at 412, 628 A.2d at 225-26. Under the terms of the policy, a claim was made when written notice of the claim was received and recorded by T.H.E. *Id.* at 411-12, 628 A.2d at 225.

On August 27, 1987—during the duration of the policy—one of P.T.P.'s customers was injured. *Id.* at 408, 628 A.2d at 224. A claim for damages, however, was not made until June 6, 1988—more than 60 days after the policy expired.[6] *Id.*, 628 A.2d at 224. Accordingly, T.H.E. denied P.T.P.'s claim on the policy. *Id.* at 409, 628 A.2d at 224.

The Court of Appeals ruled that T.H.E.'s denial was proper, finding that the policy had expired before any claim was made. *Id.* at 415, 628 A.2d at 227. Because the making of a claim was a condition precedent for coverage, the Court of Appeals refused to apply § 19-110's requirement for a showing of prejudice. *Sherwood*, 418 Md. at 332, 13 A.3d at 1288 (explaining

---

[6] While P.T.P. had renewed its insurance, the new policy did not apply to the particular claim at issue. Specifically, the renewed policy ran from May 27, 1988 to May 27, 1989. The retroactive date for this new policy, however, was Mary 27, 1988, which meant that claims that arose from events occurring before May 27, 1988 were not covered by the policy. Thus, the accident on August 2, 1987 was not covered.

9

the Court of Appeal's conclusion in *T.H.E.*). As the Court of Appeals noted, the purpose of statute was to protect against denials of coverage based upon the insured's failure to comply with the agreement's notice terms where that failure had not prejudiced the insurer. *See T.H.E.*, 331 Md. at 421, 628 A.2d at 230. Thus, the Court of Appeals found that the statute did not apply in *T.H.E.*:

> Here, T.H.E. does not deny coverage because of an alleged material failure by P.T.P. to perform a covenant to give notice, or to satisfy a policy provision that might be phrased as a condition that must be satisfied to prevent the loss of coverage that otherwise would apply. In this case the extended reporting period under the original policy had expired before P.T.P. reported the Buckley claim to T.H.E. The original policy had come to an end with respect to newly reported claims. [Section 19-110] could no more revive the original policy to cover the Buckley claim than [§ 19-110] could reopen an occurrence policy to embrace a claim based on an accident that happened after the end of the policy period.

*Id.* at 415, 628 A.2d at 228. Because the particular interests protected by the statute were not implicated, T.H.E. was not required to provide a showing of prejudice prior to their denial of the claim.

### B. Sherwood Brands, Inc. v. Great American Insurance Co.

The Court of Appeals clarified the application of § 19-110 to claims-made policies in *Sherwood Brands, Inc. v. Great American Insurance Co*. There, Great American Insurance Co. ("Great American") supplied Sherwood Brands with an employment practices liability insurance policy effective May 1, 2007 to May 1, 2008. The definition of a claim included civil proceedings instituted against Sherwood Brands by service of a complaint, but the policy also stated that written notice within 90 days of the end of the policy period was a "condition precedent" of coverage. *See id.* at 304-05, 13 A.3d at 1271. Subsequently, two separate suits were initiated against Sherwood Brands during the policy period. *Id.* at 305, 13 A.3d at 1271.

10

Notice, however, was not provided to Great American until October 27, 2008—more than 90 days after the end of the policy. *Id.* at 305-06, 13 A.3d at 1271-72.

The Court of Appeals began its analysis of the case by carefully circumscribing its holding in *T.H.E.* In particular, the Court of Appeals indicated that it intended to carefully review the issues before it:

> It would be simple—if not lazy—for us to conclude that *T.H.E.* held that § 19–110 does not apply to claims-made policies, pronounce the Policy a claims-made policy, and move on to the next case. We decline to follow that path. *T.H.E.* is not dispositive wholly of the present case. Further, it would be simple to focus on the portion of the Policy requiring Sherwood to give notice "as soon as practicable, but in no event later than ninety (90) days after the end of the Policy Period," declare the Policy a "claims-made-and-reported" policy, and jump on the bandwagon of other jurisdictions that decline uniformly to extend notice-prejudice rules to claims-made-and-reported policies. But no, we shall take the path less traveled. Our emphasis should not be on other jurisdictions' treatment of claims-made and claims-made-and-reported policies vis à vis their respective notice-prejudice rules because most of those cases did not confront or construe a statute like Maryland's. Thus, our emphasis must be on the text of, and policies underlying, § 19–110.

*Id.* at 326, 13 A.3d at 1284. Noting that the terms of the insurance agreement expressly labeled timely notice as a condition precedent of coverage, the Court of Appeals nevertheless found that the notice provisions must be treated as covenants and that § 19-110 applied. *Id.* at 331, 13 A.3d at 1287 ("[Section 19-110] was enacted effectively to overrule *Watson*, discard the strict condition-precedent approach, and "make[ ] policy provisions requiring notice to, and cooperation with, the insurer *covenants and not conditions*." (quoting *Sherwood Brands, Inc. v. Hartford Acc. and Indem. Co.*, 347 Md. 32, 42, 698 A.2d 1078, 1082 (Md. 1997))).

Ultimately, the Court of Appeals summarized the basic rule to be applied in future cases as follows:

> We hold that § 19–110 does not apply, as was the case in T.H.E., to claims-made policies in which the act triggering coverage—usually notice of a claim or suit being filed against and served upon an insured under third-party liability policies—does not occur until after the expiration of the liability policy, as this non-occurrence of the condition precedent to coverage is not a "breach of the policy," as required by the statute. On the other hand, we hold that § 19–110 does apply, as is the case at present, to claims-made policies in which the act triggering coverage occurs during the policy period, but the insured does not comply strictly with the policy's notice provisions. In the latter situation, § 19–110 mandates that notice provisions be treated as covenants, such that failure to abide by them constitutes a breach of the policy sufficient for the statute to require the disclaiming insurer to prove prejudice.

*Id.* at 333, 13 A.3d at 1288. Moreover, the Court of Appeals clarified that "[n]otice provisions, *even in claims-made-and-reporting policies*, must be deemed covenants such that failure to abide by them constitutes a breach of the policy sufficient to make § 19-110 applicable to such policies." *Id.* at 327 n.21, 13 A.3d at 1285 n.21 (emphasis added).

## II. Application of § 19-110 Jurisprudence to This Case

This Court recognizes that Judge Bredar and Judge Grimm of this Court have recently ruled that § 19-110 was inapplicable to insurance agreements arguably similar to the one involved in this case. *See Minnesota Lawyers Mut. Ins. Co. v. Baylor & Jackson, PLLC*, 852 F. Supp. 2d 647 (D. Md. 2012); *Financial Industry Regulatory Authority, Inc. v. Axis Ins. Co.*, No. PWG-12-1053, 2013 U.S. Dist. LEXIS 82343 (D. Md. June 12, 2013). However, both of those cases were decided on summary judgment rather than motions to dismiss. In this case, Zurich has moved to dismiss the complaint under Rule 12(b)(6), contending that it fails to state a claim.

In addition, this Court finds the state of § 19-110 jurisprudence in the Fourth Circuit is still very much in flux[7] and that further development of the record would better enable this

---

[7] The Fourth Circuit has yet to issue a definitive opinion addressing § 19-110 after the *Sherwood* case. Indeed, on appeal in *Baylor & Jackson*, at least one Judge of the U.S. Court of Appeals for the Fourth Circuit expressly rejected

Court to determine the ultimate applicability of § 19-110. Under Maryland law, the characterization of the policy as a claims-made and reported policy in the insurance agreement is not controlling. *See Sherwood*, 418 Md. at 327 n.21, 13 A.3d at 1285 n.21 ("Notice provisions, *even in claims-made-and-reporting policies*, must be deemed covenants such that failure to abide by them constitutes a breach of the policy sufficient to make § 19-110 applicable to such policies." (emphasis added)); *see also id.* at 327 n. 22, 13 A.3d at 1284 n.22 ("*T.H.E.* does not stand for the proposition that the statute does not apply to a 'claims made plus reporting' policy'"). Rather, the facts of this case and the provisions of the agreement must be scrutinized to determine the applicability of § 19-110.

---

the district court's conclusion. *See Minnesota Lawyers Mut. Ins. Co. v. Baylor & Jackson*, No. 12-1581, 2013 U.S. App. LEXIS 13235, at *35-*36 (4th Cir. June 27, 2013) (unpublished) (Thacker, J., dissenting). Two other judges of the panel avoided the issue by simply finding that, even if § 19-110 applied, the insurance company had adequately shown actual prejudice. *Id.* at *20-*21 ("The district court concluded that section 19-110 is inapplicable to the policy MLM provided to Baylor & Jackson, but we decline to reach the issue.").

In his opinion in *Axis Insurance Co.*, Judge Grimm quoted at length a section from *Sherwood* that summarized the development of notice-prejudice law after *T.H.E.* The passage reads:

> Nationwide, courts' holdings regarding the applicability of notice-prejudice rules to claims-made-and-reported policies have been uniform; "[i]n those jurisdictions that have examined the distinction between claims-made and claims-made-and-reported policies, the courts have uniformly relieved the insurers from any requirement to prove prejudice under the latter form of coverage." 3 *New Appleman on Insurance*, supra § 20.01[7][b]. Applying Maryland law, the federal Fourth Circuit Court of Appeals and the United States District Court for the District of Maryland—relying on *T.H.E. [Ins. Co. v. P.T.P. Inc.*, 628 A.2d 223, 223, 331 Md. 406 (Md. 1993)]—held that **§ 19-110's provisions do not apply to claims-made-and-report[ed] policies**. *See Janjer Enters., Inc. v. Executive Risk Indem., Inc.*, 97 Fed. Appx. 410, 414 (4th Cir. 2004) ("Maryland courts have held that 'claims made and report[ed]' policies ... are not subject to its prejudice requirement."); *Maynard v. Westport Ins. Corp.*, 208 F. Supp. 2d 568, 574 (D. Md. 2002) (quoting *The Rouse Co. v. Fed. Ins. Co.*, 991 F. Supp. 460, 465 (D. Md. 1998)) ("Section 19-110, however, only applies to true 'claims made' policies. 'Under Maryland law, the "actual prejudice" requirement of § 19-110 does not apply to a "claims made plus report[ed]" policy....'").

*Axis Ins. Co.*, 2013 U.S. Dist. LEXIS 82343 at *30-*31 (quoting *Sherwood*, 418 Md. at 324, 13 A.3d at 1282-83). However, upon further review, this Court notes that *Sherwood* explicitly states that § 19-110 applies to claims-made and reported policies. *See* 418 Md. 326-27, n.21 & 22, 13 A.3d at 1284 n.21 & 22. Moreover, later in the *Sherwood* opinion, the Court of Appeals of Maryland disavowed portions of the quoted passage. *See id.* at 418 Md. 326 n.21, 13 A.3d at 1284 n.21 ("[W]e disavow ourselves of language in *Janger*, *Maynard*, and *Rouse* suggesting that *T.H.E.* be read to stand for the proposition that § 19-110 does not apply to all 'claims-made-and-reporting policies.'").

On its face, McDowell's Complaint contains sufficient allegations to trigger the application of § 19-110. Brasher Design first learned that MHT did not have the tax credit application on September 23, 2004, but a formal claim—the Zokaites Complaint—was not filed until June 27, 2006. Pl.'s Compl. ¶¶ 9, 11. At that time, the 2005-06 Policy was in effect, and that policy contained a retroactive date before September 23, 2004. Pl.'s Compl. ¶ 14; Ex. C p.3. Notice of the Zokaites Complaint, however, was not provided to Zurich until November 2009—several years after the 60-day notice period provided for in the 2005-06 Policy terms provided. Pl.'s Compl. ¶ 14. Thus, McDowell has alleged that a policy was in place; that a trigger event (the Zokaites Complaint) occurred during the policy period; and that coverage was denied based upon a failure to provide timely notice. Therefore, because an insurance policy was in place and effective when the claim against the insured was first made, the factual circumstances of this case make it similar to *Sherwood* and different from *T.H.E.*

In addition, the notice requirements contained in the 2005-06 Policy are likely covenants under Maryland law. *See Sherwood*, 418 Md. at 331, 13 A.3d at 1287 ("[Section 19-110] was enacted effectively to . . . discard the strict condition-precedent approach, and "make[ ] policy provisions requiring notice to, and cooperation with, the insurer *covenants and not conditions*." (quoting *Sherwood Brands, Inc. v. Hartford Acc. and Indem. Co.*, 347 Md. 32, 42, 698 A.2d 1078, 1082 (Md. 1997))). The 2005-06 Policy defines a "Claim" as "any demand received by you, seeking 'Damages' or 'Professional Services' and alleging liability or responsibility on your part." Pl.'s Compl. Ex. B at 5, Ex. C. at 5. Thus, the most basic definition of the policy suggests that the triggering event is the assertion of a claim against the Brasher Design, not the reporting to the Zurich of third party's claim.

Moreover, several of the provisions of the policy invoke language of contingency. With respect to the coverage of the policy, the 2005-05 Policy states that Zurich will pay for "'Claims' first made against [Brasher Design] and reported to us during the 'Policy Period'… *provided that* … [Brasher Design] give[s] prompt notice of a 'Claim', but not later than 60 days after expiration or termination of this policy, in accordance with the Notice of Claims conditions of this policy." *Id.* (emphasis added). Similarly, the Notice of Claims condition contained in the "Claim Provisions" section contains similar language, stating that "[w]ritten notice must be *provided* to [Zurich] no later than 60 days after the expiration or termination of the policy." Pl.'s Compl. Ex. B at p. 8 (emphasis added). The term "provided" in both of these clauses suggests that coverage was intended to be a condition or contingency for coverage. As the Court of Appeals of Maryland made clear in *Sherwood*, however, such language in notice provisions must be treated as a covenant rather than a condition precedent under Maryland law. *See Sherwood*, 418 Md. at 331, 13 A.3d at 1287 ("[Section 19-110] was enacted effectively to . . . discard the strict condition-precedent approach, and "make[ ] policy provisions requiring notice to, and cooperation with, the insurer *covenants and not conditions*." (quoting *Sherwood Brands, Inc. v. Hartford Acc. and Indem. Co.*, 347 Md. 32, 42, 698 A.2d 1078, 1082 (Md. 1997))); *see id.* at 331, 13 A.3d at 1287 ("Therefore, notwithstanding that Great America labeled the notice provisions in the Policy as conditions precedent to coverage, § 19-110 mandates that the notice provisions of the Policy be treated as covenants, not conditions.").

If the notice terms of the insurance agreement are covenants, Brasher Design's failure to provide timely notice is a breach of the agreement. Thus, McDowell's allegation that Zurich denied coverage based upon Brasher Design's breach of the covenant to provide timely notice would trigger the application of § 19-110 and the requirement for a showing of prejudice. *See* §

19-110 (requiring a showing of actual prejudice where coverage is disclaimed based upon a breach of the policy "by not giving the insurer required notice"). Therefore, McDowell's Complaint is sufficient to assert a claim entitling it to relief.

## CONCLUSION

For the reasons stated above, Defendant Zurich American Insurance Co.'s Motion to Dismiss (ECF No. 6) is DENIED.

A separate Order follows.

Dated: September 17, 2013      /s/_____
                                Richard D. Bennett
                                United States District Judge